IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| DAVID SPEARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:16-cv-01248-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.  Introduction

The plaintiff, David Spears, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Mr. Spears timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Spears was fifty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eighth grade education. (Tr. at 261-62.) His past work experiences include employment as a truck driver and roofer. (Tr. at 217.) Mr. Spears claims that he became disabled on August 20, 2013, due to

bilateral shoulder degenerative joint disease, chronic obstructive pulmonary disease ("COPD"), high blood pressure, irregular heartbeat, depression, chronic bronchitis, and osteoarthritis in the knees. (Tr. at 78.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Spears met the insured status requirements of the Social Security Act through December 1, 2014. (Tr. at 37.) He further determined that Mr. Spears has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, the plaintiff's bilateral shoulder degenerative joint disease, left knee osteoarthritis, hypertension, cervical degenerative disk disease, and COPD are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 41.) The ALJ did not find Mr. Spears's allegations to be totally credible, and he determined that Mr. Spears has the following RFC:

> to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and
> 416.967(b) except with no more than occasional pushing and pulling

with the upper and lower extremities; no climbing of ladders, ropes, or scaffolds; no more than infrequent balancing; no more than occasional kneeling, crouching, and crawling; no more than occasional overhead reaching bilaterally; no more than occasional work in environments involving exposure to extreme cold; no work with hazardous machinery or unprotected heights; and no more than occasional exposure to pulmonary irritants.

(*Id.*)

According to the ALJ, Mr. Spears is unable to perform any of his past relevant work, is "closely approaching advanced age," and has a "limited education," as those terms are defined by the regulations. (Tr. at 44.) The ALJ determined that transferability of job skills was not an issue because Mr. Spears does not have past relevant work. (Tr. at 45.) Because Mr. Spears cannot perform the full range of light work, the ALJ enlisted a Vocational Expert ("VE") and used Medical-Vocational Rule 202.10 as a guideline for finding that there are a significant number of jobs in the national economy that Mr. Spears is capable of performing, such as sorter, electrical accessories assembler, and small parts assembler. (*Id.*) The ALJ ultimately concluded that the plaintiff was not disabled from August 20, 2013, through the date of the decision. (Tr. at 46.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there

is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Mr. Spears alleges that the ALJ's decision should be reversed and remanded for four reasons.[1] First, he contends that the ALJ's RFC finding is conclusory and violates Social Security Ruling ("SSR") 96-8a. Second, he argues that the ALJ erred in finding his subjective complaints of pain not credible and asserts that SSR 16-3p, which became effective on March 28, 2016, should have been applied. Third, he contends that the ALJ erred in failing to apply Grid Rule 201.11 to direct a finding of disabled at step five. Fourth, he argues that the Appeals Council refused to review new evidence he submitted solely because it was dated after the ALJ's decision without considering whether the new evidence was actually chronologically relevant and/or material, and that the ALJ's decision was not based on substantial evidence when the evidence to the Appeals Council is considered.

---

[1]    The Court has combined some of Plaintiff's arguments.

## A.     RFC Determination and SSR 96-8a

The RFC is the ALJ's assessment of the most a claimant can do despite his impairments based on all of the relevant medical and other evidence. *See* 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). SSR 96-8p provides that an RFC assessment must identify an individual's functional limitations and assess his work-related abilities on a function-by-function basis prior to expressing the RFC in terms of general exertional levels. *See* SSR 96-8p, 1996 WL 374184, at *3. SSR 96-8p also requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See id.*

Plaintiff quarrels with the ALJ's RFC finding in several respects. First, Plaintiff claims that "there is no medical evidence that claimant's conditions of asthma and COPD can withstand exposure to pulmonary irritants for 3 hours out of an 8 hour day." (Doc. 13 at 6.) However, objective medical evidence in the record supports the ALJ's determination that Plaintiff can occasionally withstand pulmonary irritants. For example, Plaintiff underwent a pulmonary function analysis at Riverview Regional Medical Center in March 2014 and had a "forced expiratory volume" of 3.46 and was discharged with no complications. (Tr. at 43,

366). Records from Quality of Life Health Center noted Plaintiff had normal respiratory effort and his lungs were clear to auscultation. (Tr. at 43-44, 297, 374, 379). Although Plaintiff reported having to perform emergency breathing treatments once or twice per week, when seen at Quality of Life Health Services in March 2014, Plaintiff reported he had not used an inhaler in months. (Tr. at 44, 376).

Plaintiff also takes issue with the RFC allowing him to push and pull with upper extremities as well as bilateral reach for 3 out of 8 hours during a typical workday, pointing out that he had shoulder surgery. However, the ALJ noted that Plaintiff had shoulder surgery and was treated for back pain. (Tr. at 43, 351-52, 372, 375-76, 379). The ALJ also noted that a June 2013 shoulder x-ray revealed only mild acromioclavicular and glenohumeral degenerative changes. (Tr. at 43, 345, 347). Further, x-ray imaging of Plaintiff's cervical spine showed normal alignment in the cervical spine and only mild degenerative changes from C4 to C6. (Tr. at 43, 345, 347). Additionally, Dr. Veluz, a consultative examiner who examined Plaintiff in December 2013, found that Plaintiff had 5/5 motor strength in both his upper and lower extremities. (Tr. at 43, 352.) Substantial evidence supports this portion of the ALJ's RFC determination.

Plaintiff also finds fault with the RFC allowing him to kneel, crouch, and crawl for 3 out of 8 hours in a typical workday, pointing out that he has complained of knee pain and that he was found to have a limited range of motion in his hips and knees. However, the ALJ noted that Dr. Veluz's December 2013 consultative examination report showed Plaintiff had 5/5 motor strength in both upper and lower extremities, and he had only mild swelling of the knees and mild paracervical and paralumbar tenderness. (Tr. at 43, 353). In addition, Plaintiff was ambulatory and did not need an assistive device at that examination. (Tr. at 43, 351, 353, 375). In sum, Plaintiff has not demonstrated error by the ALJ that requires reversal on this issue.

Finally, Plaintiff argues that the RFC is not supported by substantial evidence because there was no opinion from a physician matching the limitations in the ALJ's RFC finding. However, Plaintiff points to no binding authority stating that a medical source statement is required. To the contrary, an RFC determination is an administrative determination reserved to the Commissioner, and is not a medical assessment. *See* 20 C.F.R. §§ 404.1527(d), 404.1546, 416.927(d), 416.946; SSR 96-5p, 1996 WL 374183. The assessment of a claimant's RFC is based on all the relevant evidence and not simply on a doctor's opinion. *See id.* §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); SSR 96-5p, 1996 WL

374183, at *5. Although physicians' opinions about what a claimant can still do are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See id.* §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.") (citing 20 C.F.R. § 404.1527(d)(2)). As such, the Court finds no error in the ALJ's RFC determination.

## B. Credibility Determination and SSR 16-3p

Plaintiff contends that the ALJ erred in evaluating his credibility under SSR 16-3p, which became effective on March 28, 2016. Plaintiff argues that this rule modification is retroactive and the case should be remanded for the ALJ to consider it.

The Commissioner published SSR 16-3p on March 24, 2016, and explicitly established the effective date for the ruling as March 28, 2016. *See* SSR 16-3p, 2016 WL 1237954, at *1 (March 24, 2016). SSR 16-3p was intended to supersede former SSR 96-7p, and was enacted for the purpose of providing "guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of

symptoms in disability claims under Titles II and XVI of the Social Security Act."

SSR 16-3p, 2016 WL 1119029 (March 16, 2013), at *1. Specifically, SSR 16-3p

> eliminat[ed] the use of the term "credibility" from [the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . .

> . . .

> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities or, for a child with a title XVI disability claim, limit the child's ability to function independently, appropriately, and effectively in an age-appropriate manner.

*Id.* at *1-2, 10 (alterations and ellipses supplied).

Plaintiff asserts that even though SSR 16-3p was not adopted until after his case was decided in January 2015, it should be applied retroactively. However, according to the Supreme Court, "[r]etroactivity is not favored in the law," and administrative rules will not be construed to have retroactive effect unless Congress expressly empowers the agency to promulgate retroactive rules and the language of the rule explicitly requires retroactive application. *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988). The retroactivity of SSR 16-3p has not been directly addressed by any circuit court of appeals in a published decision. Nonetheless, the Eleventh Circuit has twice recently declined to apply SSR 16-3p retroactively in unpublished cases. *See Green v. Comm'r*, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017); *Lara v. Comm'r*, 2017 WL 3098126, at *8 n.6 (11th Cir. July 21, 2017).

Plaintiff cites *Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016), a Seventh Circuit case which neither endorsed nor otherwise discussed retroactive application of SSR 16-3p. He also cites *Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 WL 4250214 (C.D. Ill. Aug. 10, 2016), a non-binding out-of-circuit district court case which cited to a Seventh Circuit case to find an exception to the rule in *Bowen*, 488 U.S. at 208, where the new rule clarifies rather than changes existing law. *See Mendenhall*, 2016 WL 4250214, at *3 (citing *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir.

1993), overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). However, contrary to the reading of *Pope* urged in *Mendenhall*, the *Pope* court did not remand for reconsideration under a new regulation, and it explicitly held that applying a regulation that is a mere clarification of an existing regulation "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." *Pope*, 998 F.2d at 483. That is, rather than remand the case for reconsideration under the new regulation, the *Pope* court considered the clarification and affirmed the ALJ's decision. *See id.* at 486-87.

Given the Supreme Court's holding in *Bowen* and the absence of any binding precedent directing that SSR 16-3p is to apply retroactively, the Court is not persuaded that SSR 16-3p applies retroactively to the ALJ's January 2015 decision in this case.

Even if SSR 16-3p did apply retroactively, the ALJ did not violate it in this case. As an initial matter, SSR 16-3p does not alter the methodology for evaluating a claimant's symptoms, but rather explains that the Commissioner eliminated the use of the term "credibility" from this consideration, as "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Even though the ALJ used the term "credibility," he did not assess Plaintiff's general, or "overall" character for truthfulness. Instead, he

determined, in accordance with SSR 16-3p, whether Plaintiff's subjective complaints were supported by the medical evidence and consistent with other information in the record, as explained further below. *See Cole*, 831 F.3d at 412 ("The change in wording [from SSR 96-7p to SSR 16-3p] is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.").

Nor did the ALJ's consideration of Plaintiff's subjective symptoms violate existing regulations, which have not changed. *See* 20 C.F.R. §§ 404.1529, 416.929. When a claimant attempts to prove disability based on his subjective complaints, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's

alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 416.929(c), (d); *Wilson*, 284 F.3d at 1225-26. An ALJ is not required to accept a claimant's allegations of pain and/or symptoms. *Wilson*, 284 F.3d at 1225–26. However, the ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). Further, when the reasoning for discrediting is explicit and supported with substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, the ALJ's decision reveals that he properly assessed Plaintiff's subjective complaints of pain. Plaintiff alleged he could not work due to rotator cuff problems in his shoulders, lower back problems, and left knee problems. (Tr. at 42, 60-61). The ALJ properly noted that the objective medical evidence did not support the level of limitation alleged by Plaintiff. (Tr. at 43). *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (noting objective medical evidence is a useful indicator in assessing the severity of alleged symptoms). Plaintiff's June 2013 shoulder x-ray showed only mild acromioclavicular and glenohumeral degenerative changes. (Tr. at 43, 345). In December 2013, consultative examiner Dr. Veluz noted Plaintiff had 5/5 motor strength in both his upper and lower extremities;

mild swelling in the knee; mild paracervical and paralumbar tenderness; and intact fine and gross motor functions. (Tr. at 43, 353). The April 2014 Quality of Life office note showed Plaintiff had normal mobility and curvature of the neck, without any tenderness, and moderate pain with motion in the lower back. (Tr. at 43, 375). Plaintiff was ambulatory and did not need an assistive device, though he walked with a limp. (Tr. at 43, 375).

The medical evidence also does not support Plaintiff's allegations of disabling mental symptoms. Plaintiff emphasizes that he received a Global Assessment of Functioning ("GAF") score of 53[2] in May 2014; he reported panic attacks on visits to Quality of Life Health Services in August 2012, March 2014, May 2014, and June 2014, and he has been prescribed medication for anxiety and depression. However, the ALJ took note of the fact that in January 2014, consultative psychological examiner Dr. Summerlin evaluated Plaintiff and noted that he was oriented to person, place, time, and circumstance. (Tr. at 38, 362). He demonstrated adequate attention and concentration, intact remote memory functioning, moderately blunted affect, and logical, coherent, and focused thought processes. (Tr. at 38, 362). His general information, computational skills,

---

[2] A GAF score of 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, American Psychiatric Association, 1994, at 32–4.

vocabulary, and social judgment were consistent with his chronological age, education background, and estimated IQ, which was in the low average range. (Tr. at 362). Additionally, during the April 2014 Quality of Life individual therapy session, Plaintiff had an appropriate appearance, unremarkable psychomotor behavior, pressured speech, appropriate affect, euthymic mood, average intellect, cooperative attitude, gained attention, realistic self-perception, logical thought processes, and unremarkable thought content. (Tr. at 400). In the June 2014 session, Plaintiff showed appropriate affect, gained and maintained attention, fair reasoning, fair impulse control, fair judgment, fair insight, logical thought processes, and unremarkable thought content. (Tr. at 39, 394). The ALJ also acknowledged Plaintiff's GAF score of 53 in May 2014, reflecting moderate symptoms, but also noted that Plaintiff had only one mental health session prior to January 2014. (Tr. at 39-40, 396). *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (noting Commissioner will consider treatment, other than medication, a claimant received for relief of pain or other symptoms). Indeed, the only mental health session Plaintiff underwent prior to January 2014 was an initial psychiatric evaluation with Cathy Keel in August 2012. (Tr. at 291-93). The January 23, 2013, Quality of Life office note indicated that Plaintiff was instructed to contact Ms. Keel so he could obtain an appointment with Ms. Brunson. (Tr. at

298). However, the record does not reflect evidence of a follow-up mental health session prior to January 2014.

Further, Plaintiff's own reported activities of daily living further support the ALJ's determination that Plaintiff's testimony regarding his impairments was not entirely credible. While the ability to engage in daily living activities does not disqualify a claimant from receiving disability benefits, the ALJ may properly consider a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) (citations omitted); *see also* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); SSR 96-7p, 1996 WL 374186, at *3. As the ALJ discussed, Plaintiff reported he could bathe, dress, and groom himself without assistance. (Tr. at 40, 362). He reported he could perform light yard work duties and simple home repairs, and take care of his dog. (Tr. at 40, 208, 362). He could also talk on the telephone, drive a vehicle, shop, visit with family members, watch television, and listen to music. (Tr. at 362). State agency psychological consultant Steven Dobbs, Ph.D., noted Plaintiff had no limitations in activities of daily living. (Tr. at 40, 85). Thus, the ALJ properly determined Plaintiff's subjective complaints were less than fully supported.

In sum, the ALJ properly assessed Plaintiff's subjective complaints. Plaintiff failed to show that the ALJ's evaluation of his alleged symptoms did not comply with the policy clarifications contained in SSR 96-7p or SSR 16-3p.

### C.  Failure to Apply Grid Rule 201.11 to Direct a Finding of Disabled

There are two avenues by which the ALJ may determine whether a claimant has the ability to adjust to other work in the national economy at step five of the sequential evaluation process. *See Phillips*, 357 F.3d at 1239. First, the ALJ may apply the Medical Vocational Guidelines, commonly known as "the grids," found in 20 C.F.R. § 404, subpart P, appendix 2. Second, the ALJ may consult a VE by posing hypothetical questions to the VE to establish whether someone with the claimant's impairments would be able to find employment. *Id.* at 1239–40.

The grids provide tables based on work classifications of sedentary, light, medium, heavy, or very heavy. These classifications are based on the exertional level, or "primary strength activities," the work requires, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* SSR 83–10. Each table considers vocational factors, such as age, education, and work experience, to "direct a conclusion" of either disabled or not disabled. *See generally*, 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). These tables constitute "administrative notice" as to the number of unskilled jobs that exist in the national economy at the various

exertional levels. Thus, when all of the claimant's vocational factors coincide with the criteria in the table, "the existence of jobs is established." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b).

However, exclusive reliance on the grids is not appropriate either (1) "when the claimant is unable to perform a full range of work at a given residual functional level"; or (2) "when a claimant has non-exertional impairments [i.e., impairments not related to strength] that significantly limit basic work skills." *See Phillips*, 357 F.3d at 1242; *see also* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). In either of these cases, the number of jobs the claimant is able to perform based on his RFC, age, education, and work experience may be affected. *See* SSR 83–12 (explaining that when a claimant's exertional limitations do not coincide with a particular exertional level in the grids, the adjudicator may need to consult a VE to determine the extent of any erosion in the occupational base); SSR 83–14 (explaining that when nonexertional impairments are present, the occupational base may be significantly narrowed and the ALJ may need to consult a vocational expert). Thus, in these kinds of cases, the ALJ must make an individualized assessment and consult a VE to determine whether there are jobs in the economy the claimant can perform. *See Phillips*, 357 F.3d at 1242–43. However, when the ALJ cannot rely solely on the grids, the ALJ nonetheless "may use [the grids] as a framework to

evaluate vocational factors . . . ." *Wilson*, 284 F.3d at 1227; *see also* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d) (recognizing that the grids can "still provide guidance for decisionmaking").

In this case, after assessing Plaintiff's RFC and finding at the fourth step of the sequential evaluation process that Plaintiff could not perform his past relevant work (tr. at 41, 44), the ALJ had to decide at the fifth and final step if Plaintiff could nonetheless perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (v), 416.920(a)(4)(iv), (v). The ALJ first looked to the grids to determine whether they might direct a conclusion of disabled or not disabled given Plaintiff's RFC and other vocational factors. (Tr. at 45). The ALJ considered Grid Rule 202.10 as it most closely corresponded to Plaintiff's vocational characteristics. (Tr. at 45). *See* 20 C.F.R. pt. 404, subpt. P, app. 2. Table No. 2, § 202.10. Specifically, Plaintiff was an individual closely approaching advanced age (50 to 54 years of age), with limited education and semiskilled past work experience, and an RFC for light work. (Tr. at 71-72, 78). *See* 20 C.F.R. §§ 404.1563(d), 404.1564(b)(3), 404.1567(b), 404.1568(b), 416.963(d), 416.964(b)(3), 416.967(b), 416.968(b). The ALJ, however, recognized that Plaintiff had additional limitations that precluded the strict application of the grids and he could use the grids only as a framework for his decision. (Tr. at 45). *See* 20 C.F.R. §§ 404.1569, 416.969; 20 C.F.R. pt. 404, subpt.

P, app. 2, § 200.00(e)(2). Thus, the ALJ obtained testimony from a VE to help determine whether other work exists. (Tr. at 45, 72-74). The VE testified that an individual with Plaintiff's limitations could perform representative occupations such as sorter, electrical accessories assembler, and small parts assembler. (Tr. at 41, 45, 73).

Plaintiff contends that the ALJ should have applied Grid Rule 201.11, which provides that if a claimant is closely approaching advanced age, has a limited education, and has unskilled, skilled, or semi-skilled past work, with skills that are nontransferable, and is now limited to sedentary work, then the claimant is disabled. 20 C.R.F. pt. 404, subpt. P, app. 2, Table No. 1, § 201.11. However, Grid Rule 201.11 involves an RFC for sedentary work. *See id.* The ALJ here determined Plaintiff retained the RFC to perform a reduced range of light work. (Tr. at 41). For all of the reasons discussed above, Plaintiff has failed to demonstrate that the RFC for light work with additional limitations was erroneous. Accordingly, the ALJ properly utilized Grid Rule 202.10 as a framework in determining whether Plaintiff could perform other jobs in the national economy.

### D. Appeals Council Review

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council.

*Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). However, "[t]he Appeals Council must consider new, material and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b). When considering the Appeals Council's denial of review, a reviewing court considers such new evidence, along with all the other evidence in the record, to determine whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram*, 496 F.3d at 1266.

Here, Plaintiff submitted evidence to the Appeals Council in connection with his request for review of the ALJ's unfavorable decision. The additional evidence included Plaintiff's report card grades from 1975-77 (tr. at 261-62); an October 28, 2014, UAB Medicine office note (tr. at 407-09); Plaintiff's October 28, 2014, neck x-ray (tr. at 412); and a patient intake form showing Plaintiff underwent a right rotator cuff repair on October 17, 2014. (Tr. at 419). The medical records address a procedure Plaintiff underwent after his hearing before the ALJ but before the decision was entered in January 2015.

Plaintiff first asserts that the Appeals Council denied review without actually examining his medical records once the Appeals Council saw that they were dated after the ALJ's hearing but before the ALJ's decision. Plaintiff's argument is without merit. The Appeals Council specifically stated that it "considered" the additional records submitted by Plaintiff, listed out Plaintiff's school records dated 1975 to 1977, and his medical records from UAB Highlands from October 2014, and stated that this evidence did not provide a basis for changing the ALJ's decision. (Tr. at 2, 5, 261-62, 405-21.) Plaintiff appears to argue the Appeals Council had a duty to articulate how it considered the additional evidence. However, the regulations do not impose an articulation duty on the Appeals Council when it denies a request for review. *See* 20 C.F.R. §§ 404.970, 416.1470; *see also Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784 (11th Cir. 2014) (holding Appeals Council not required to provide a detailed discussion of a claimant's new evidence when denying a request for review, decided based on language in the Appeals Council's order similar to that used by the Appeals Council here).

Plaintiff attempts to rely upon *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317 (11th Cir. 2015), where the Eleventh Circuit held that it was legal error for the Appeals Council to refuse to consider a claimant's additional evidence. *Id.* at 1321. The Appeals Council in that case explained that it refused to consider

additional evidence from two medical sources because "their opinions concerned a later time period and were immaterial to whether [the claimant] was disabled on or before the date of the ALJ's decision." *Id.* at 1320. The *Washington* court expressly noted that the case was "not a case in which the Appeals Council considered the additional evidence and then denied review." *Id.* at 1321 n.5. The court explained that "[w]hen the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not 'required to provide a detailed rational for denying review.'" *Id.* (quoting *Mitchell*, 771 F.3d at 784). Unlike the Appeals Council in *Washington*, the Appeals Council here stated that it "considered" the additional evidence, so here, *Mitchell*, 771 F.3d at 784, controls, not *Washington.*

Plaintiff also argues that once the additional evidence submitted to the Appeals Council is taken into consideration, substantial evidence does not support the ALJ's denial of benefits. This Court must decide whether the additional records submitted to the Appeals Council by Plaintiff were new, chronologically relevant to the time period considered by the ALJ, and whether they constituted material evidence, in order to determine whether the Appeals Council erred in denying review. *See Ingram*, 496 F.3d at 1261.

Assuming the evidence is new and chronologically relevant to the period of time considered by the ALJ, it is not material. Evidence is material when there is a

reasonable possibility that it would change the administrative result. *Hyde v. Bowen*, 823 F.2d 465, 459 (11th Cir. 2009). The new evidence of Plaintiff's report card grades from the seventh grade is consistent with the ALJ's finding that Plaintiff had a limited education. (Tr. at 45). *See* 20 C.F.R. §§ 404.1564(b)(3), 416.963(b)(3) ("We generally consider that a 7th grade through the 11th grade level of formal education is a limited education."). The new medical evidence is consistent with the ALJ's finding that Plaintiff could perform a reduced range of light work. (Tr. at 41). While Plaintiff's intake form at UAB Medicine shows that he underwent a right rotator cuff repair on October 17, 2014 (tr. at 419), the clinical findings reported in the October 28, 2014, office note do not establish limitations greater than those included in the RFC finding. (Tr. at 408-09). The office note shows Plaintiff was alert, oriented times 3, normally developed, and well-nourished. (Tr. at 408). He was in no acute distress and had a normal gait. (Tr. at 408). His neck range of motion was "reasonable," and his shoulder provocative maneuvers were negative. (Tr. at 408). He exhibited 5/5 motor strength in the upper extremities; grossly intact upper extremity sensation; and 2/4 reflexes. (Tr. at 408). Plaintiff's October 2014 neck x-ray shows persistent retrolisthesis of C3 on C4 and C4 on C5, grade 1, with multilevel degenerative changes, but no fractures and no prevertebral soft tissue abnormality. (Tr. at 412).

As part of this issue, Plaintiff also argues that because he complained of severe shoulder pain at the hearing, and he later underwent the left rotator cuff repair (as evidenced by the additional records submitted to the Appeals Council), the hypothetical question that the ALJ posed to the VE did not fully account for all of Plaintiff's limitations because it did not account for all of Plaintiff's subjective complaints. The ALJ, however, properly incorporated in the hypothetical the limitations the ALJ found credible and supported by the record. (Tr. at 41, 72-74.) *See Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 696, 699 (11th Cir. 2006) (finding ALJ properly omitted limitations alleged by claimant from the VE's hypothetical where ALJ expressly discredited claimant's subjective complaints). The ALJ was not required to include unsupported limitations in his hypothetical to the VE or accept the VE's testimony in response to a hypothetical question that included such opinions. *See Crawford*, 363 F.3d at 1161. Considering that the new evidence regarding Plaintiff's rotator cuff procedure was not material, the Court cannot say that the ALJ's hypothetical question was erroneous.

The additional evidence Plaintiff submitted does not demonstrate that substantial evidence did not support the ALJ's decision and the Appeals Council properly denied review.

**IV.    Conclusion**

Upon review of the administrative record, and considering all of Mr. Spears's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Additionally, Plaintiff's motion to remand is due to be denied. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 29, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704